Anthony D. Shapiro
Elaine T. Byszewski (SBN 222304)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
301 N. Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: Tony@hbsslaw.com
          Elaine@hbsslaw.com

Simon Bahne Paris
Patrick Howard
Charles J. Kocher
**SALTZ, MONGELUZZI, BARRETT
& BENDESKY, P.C.**
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
Telephone: (215) 575-3985
Facsimile: (215) 496-0999
Email: sparis@smbb.com
          phoward@smbb.com
          ckocher@smbb.com
*(Additional counsel listed on signature page)*

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
<u>SOUTHERN DIVISION – SANTA ANA</u>**

| | |
|---|---|
| STEVEN RENSEL & BRIAN KIRSCH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FLUIDMASTER, INC.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**<u>CLASS ACTION</u>**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

1    Plaintiffs, Steven Rensel and Brian Kirsch, by and through their undersigned counsel,

2    individually and on behalf of all others similarly situated, allege:

3                              <u>**NATURE OF THE ACTION**</u>

4    1.    This action seeks to redress the latent defects in Fluidmaster's "NO BURST"

5    Toilet Connectors with acetal coupling nuts ("Toilet Connector"). Fluidmaster couches itself as

6    a world leader in toilet repair and plumbing products. During the relevant period, Fluidmaster

7    designed, manufactured, distributed, and sold flexible Toilet Connectors. To permit water flow

8    into the toilet tank, a Toilet Connector connects the water fixture shut-off valve to the base of the

9    toilet using a plastic coupling nut. These plastic coupling nuts are uniformly defective in their

10   design and labeling. As a result, the Toilet Connector poses a substantial risk of failure by

11   permitting the unrestricted flow of water into the home causing damage to property.

12   2.    Fluidmaster knew, and has known, about the defects with its Toilet Connectors

13   and that they were prone to failure following routine installation. Fluidmaster also knew that as

14   early as 2003, a mechanically and financially feasible, safer alternative design for the Toilet

15   Connector that presented no adverse consequences to the product or to the consumer was

16   available in the marketplace. Rather than replace these defective Toilet Connectors, Fluidmaster

17   concealed and suppressed its knowledge of these defects, exposing Plaintiffs and the putative

18   Classes to a substantial risk of significant property damage.

19   3.    Fluidmaster remediated many of the design defects with its Toilet Connectors

20   complained of herein, including a wholesale change of the plastic material. Fluidmaster,

21   however, *never* notified Plaintiffs and the members of the putative Classes that a remediated

22   product was available. Instead, Fluidmaster left Plaintiffs and the putative Classes exposed to

23   the risk of catastrophic water damage by the defective product, while it slipped its remediated

24   Toilet Connectors into the market undetected.

25   4.    Plaintiffs and the putative Classes have suffered, and will continue to suffer,

26   injury-in-fact and lose money as a direct result of Fluidmaster's conduct. Each putative Class

27   Member has either expended money to repair property damage caused by the defective Toilet

28   Connector, has paid for a defective Toilet Connector when they otherwise would not have, or

CLASS ACTION COMPLAINT                    1

will be caused to expend money to replace the defective Toilet Connectors once these defects are publicly known.

5.     This action seeks to both compensate those who have already suffered damages caused by the Toilet Connector and minimize any future damages by publicly disclosing the existence of the defects and establishing a protocol to remove them from properties.

6.     The central issue raised herein – whether Fluidmaster's Toilet Connectors are defective – is common to the members of each proposed Class. There is an economy to class treatment of this central question because its resolution has the potential to eliminate the need for continuing, repeated litigation related to the Toilet Connectors' alleged defects and the reasons for its repeated failure.

## JURISDICTION

7.     This Court has jurisdiction over this litigation pursuant to 28 U.S.C. § 1332(d), as the matter is brought as a class action under Rule 23 of the Federal Rules of Civil Procedure, and the sum of the amount in controversy exceeds $5,000,000.  The requirement of minimal diversity is met as the dispute is between citizens of different states and a citizen of the State of California. *See* 28 U.S.C. § 1332(d)(2)(A).

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendant, Fluidmaster, Inc., resides in this District.  The causes of action for Plaintiffs and the putative Class also arose, in part, in California, and the Defendant regularly transacts business in this District and within California.

## PARTIES

**Plaintiff:**

9.     Plaintiff, Steven Rensel, is a resident of the State of Arizona, City of Scottsdale. On September 25, 2013, the plastic coupling nut on a Fluidmaster "NO-BURST®" toilet supply line fractured and failed causing property damage.  Mr. Rensel purchased the supply line less than four years prior to its failure from an Arizona home improvement store, and he installed it himself, by hand.  As depicted in the picture below, the Toilet Connector included a "10 year warranty."




**PLAINTIFF RENSEL'S
FAILED CONNECTOR**

**PLAINTIFF RENSEL'S LABEL WITH 10-YEAR WARRANTY**

10.     Plaintiff, Brian Kirsch, is a resident of the State of Vermont, City of Troy.  On July 14, 2011, Plaintiff Kirsch was vacationing with his family in New Jersey when he received a phone call from his garbage man that water was spilling out of an upstairs window and raining down in his garage.  Plaintiff Kirsch returned home to find that the plastic coupling nut on a Fluidmaster toilet supply line in an upstairs bathroom had fractured and failed, causing catastrophic property damage to his home.  Plaintiff Kirsch and his family were required to live in a trailer during the next several months while his home was gutted and completely renovated.  At the time of the failure, Plaintiff's Kirsch's home had been built less than eight years earlier.



**PLAINTIFF KIRSCH'S FAILED CONNECTOR**

11.     Defendant, Fluidmaster, Inc. is a California corporation headquartered at 30800 Rancho Viejo Road, San Juan Capistrano, California. Fluidmaster is the world's largest producer of toilet repair products. Fluidmaster operates a 184,000-square-foot facility in San Juan

1   Capistrano that includes 54,000 square feet of office space surrounding a 130,000-square-foot
2   manufacturing plant and test lab.  At all relevant times, Fluidmaster was actively involved in
3   designing, manufacturing, assembling, marketing, distributing, and selling Toilet Connectors
4   from the State of California throughout California, the United States, Europe, Asia, Australia,
5   and the Americas.  All of Fluidmaster's critical design, manufacturing and labeling decisions
6   related to the Toilet Connectors, were made by Fluidmaster employees located in California.

## <u>FACTUAL ALLEGATIONS</u>

8       12.     Defendant Fluidmaster designed, manufactured, assembled, tested, labeled and
9   offered for distribution and/or sale defective Toilet Connectors with the specific intention and
10  purpose that these defective Toilet Connectors be installed by builders, plumbers, and consumers
11  alike in homes, commercial properties, and other dwellings throughout the United States.  In
12  doing so, Fluidmaster represented that the Toilet Connectors were of superior engineering and
13  heavy-duty craftsmanship; when in reality, they contained latent defects.

14      13.     Fluidmaster knowingly failed to publicly disclose that its Toilet Connectors were
15  defective, unsafe and posed a substantial risk of failure resulting in damage to property.

16      14.     The Toilet Connector designed, manufactured, assembled, tested, labeled,
17  marketed, distributed and/or sold by Fluidmaster connects a water fixture shut-off valve to a
18  toilet.  Prior to the introduction of these Toilet Connectors, the connection between a water shut-
19  off valve and a toilet required a hard pipe connection.  A section of rigid metal tubing would be
20  cut to the appropriate length with metal coupling assemblies on both ends of the tubing to
21  connect the property's water shut-off valve to the toilet.

22      15.     Toilet Connectors eliminated the need for the customized cut necessary to fasten
23  rigid metal tubing between the shut-off valve and toilet.  Toilet Connectors were manufactured in
24  a variety of lengths (6" – 20") and made available for sale, at large, to builders, plumbers, and
25  consumers through home do-it-yourself centers such as Home Depot or Lowes.  They retailed
26  anywhere from $3 to $7.

27

28

CLASS ACTION COMPLAINT                 4



Fluidmaster Toilet
Connector with Plastic
Coupling Nut

16.     Initially, when first introduced to the market, the coupling assemblies on both ends of the Toilet Connector were made of metal.  The metal couplings connected to both the water shut-off valve and the toilet.  These metal nuts were not susceptible to fracture.

17.     Due to the cost associated with the materials for, and manufacture of, the metal nut, Fluidmaster replaced the toilet attachment end with a cheaper acetal plastic coupling nut sometime in the early 1990s.  Fluidmaster's plastic design, however, is more akin to a metal design, which fails to account for the material and behavioral differences of plastic.

18.     Fluidmaster promoted the plastic coupling nut on its Toilet Connectors as "heavy duty" and "durable and easy to grip" for installation.  Between 2001- 2004, Fluidmaster offered a 10-year warranty for its connectors, and touted it as "the longest warranty available."

19.     However, shortly thereafter, Fluidmaster realized that the plastic coupling nuts were failing long before their guaranteed 10-year warranty period.  As a result, sometime in approximately September 2004, Fluidmaster ceased offering the 10-year warranty.  Despite the internal decision to remove the 10-year warranty (and acknowledgement that the connectors fail long before 10-years), thousands of the connectors remained stocked on store shelves across the United States, including those that caused damage to Plaintiffs.

20.     As of 2007, despite its claims of "durability" and "heavy-duty" craftsmanship, Fluidmaster faced *more than* 400 documented claims related to the nearly identical failure of the plastic coupling nut on its Toilet Connectors.  Repeatedly, the plastic coupling would suffer the same circumferential fracture causing water damage to property.

21.     Since 2007, hundreds - *if not thousands-* more of Fluidmaster's Toilet Connectors have failed, and continue to fail, for the identical reason – circumferential fracture at the base of the plastic coupling – causing millions of dollars in damage. (*See* Figure 1).

CLASS ACTION COMPLAINT                    5

**Figure 1**

  

  

22.     These repeated, circumferential fractures are the direct result of the defective design and labeling of the Toilet Connector.  The Toilet Connector's plastic coupling nut fails to adhere to the most basic design standards in the plastics industry.

23.     When using plastics to manufacture and design parts, the plastics industry recognizes that a proper design strategy will include, at minimum: (a) a concern for safety and performance; (b) appropriate material selection and a mold design optimized for the chosen material to achieve the functional design goal; (c) maximum functionality; and (d) optimum material usage.

24.     Unlike metals, every plastic design, "must incorporate the estimated creep behavior of a particular [plastic] resin under the load and environmental conditions [the part is] expected" to be placed in.  DuPont, *Delrin Acetal Resin Design Guide – Module III*, at 21. Failure to do so is a breach of the most basic design duties.

## Fluidmaster's Design Fails to Account for "Creep" in Plastic

25.     "Creep" is an engineering term used to describe the continued deformation or extension of a plastic component that is under a continuous load.  Most people have seen

CLASS ACTION COMPLAINT                    6

examples of creep in their everyday lives, be it through plastic fence gates that sag over time due to creep of the hinge material, plastic washers that permanently flatten and change shape over time under compression loads, or polymer ropes that stretch over time when used to support heavy objects. Creep occurs in all engineering materials, including metals, plastics, and ceramics; but plastics respond to long term loads differently than metals or ceramics.

26. Under stress, polymer molecules in plastics seek to relieve stress, or relax. If the stresses are small and a plastic component is exposed to stress for only a short period of time, the component will deflect and rebound without suffering any long term damage.

27. If, however, stresses are sufficiently large (*e.g.,* tightening or torqueing to avoid water leaks) and long term stresses exist (*e.g.,* constant pressure resulting from tightening and compression), the plastic molecules inside a plastic part will creep in an effort to relieve stress and relax. Over time, and with constant pressure, the plastic material will microscopically experience "crazing."

28. "Crazing" or crazes are like fine, thin, tiny type cracks that extend in a plastic part on or under the surface. Crazes are initiated when the external stretch of the plastic material causes a microscopic void to open up at a stress concentration point created by a notch in the material.

29. After the void is opened, the microscopic void will spread in a plane perpendicular to the highest principal stress. When the component's design can no longer withstand the constant pressure – and achieve sufficient relaxation – the crazing will transition to a crack and failure occurs. This type of failure is termed "creep rupture."

30. Creep is so fundamentally relevant to plastic product design that the creep behavior of materials is taught in the most basic engineering courses dealing with materials science, failure analysis, fracture mechanics, polymer physics and product design.

31. As discussed below, Fluidmaster's design for its plastic coupling nut failed to account for the creep behavior of the plastic material under a load. That design failure coupled with the internal localized stress created by sharp stress concentrators in the thread design of the plastic nut, concentrates a large stress load into a small area, imparting significant localized

stress into the surrounding polymer material.  This flawed design invariably leads to crazing as the plastic seeks to relax under the load.

32.    And since the stress applied to the nut remains essentially constant during its attachment to the underside of the toilet, the existing microscopic crazes continue to grow and new crazes continue to form in a perpendicular plane as the part seeks to relax.  As the crazes progressively link in the perpendicular plane, a nearly identical circumferential crack is formed within the wall of the nut.



**Figure 2**
**(Exemplar Image of Plastic Coupling Nut  Depicting Circumferential Crack from Creep Rupture)**

33.    Once the crack in the sidewall forms, the remaining material then experiences instantaneous fracture, and water begins to spray from the fractured nut.  Often, the fractured nut completely separates into two pieces as seen in Figure 3 below.

CLASS ACTION COMPLAINT                          8



**Figure 3**
**(Fluidmaster Fractured Coupling Nut)**

34. Fluidmaster's design failed to account for the plastic material's "estimated creep behavior… under the load and environmental conditions" that the nut would regularly be placed into by the design defect of a notch, and resulting stress concentration. DuPont, *Delrin Acetal Resin Design Guide – Module III*, at 21

35. In fact, Fluidmaster's toilet nut design is particularly susceptible to creep and creep rupture due to design defects. These design defects result in detrimentally high stress concentrations in a localized area, in a notch-sensitive material that does not readily relieve stress without ultimate fracture. These defects could have been easily avoided.

## Improper Material Selection – A "Notch" Sensitive Polymer

36. Fluidmaster used "acetal" for the coupling's material. Acetal is widely accepted as a notch sensitive polymer that is prone to failure due to stress concentration. In other words, Fluidmaster selected a plastic material for the coupling nut that is particularly susceptible to creep and creep rupture when the design contains sharp corners (notches) and is placed under a constant load.

37. Fluidmaster's selection of "acetal" for the plastic nut, and the inclusion of a notch in the thread design essentially ensured that creep, and ultimately, rupture would occur.

38. In particular, Fluidmaster's design failed to account for the "notch sensitivity" of the acetal. Notch sensitivity is commonly understood to mean the extent to which the sensitivity of a material to fracture is increased by the presence of a notch or stress concentrator.

39. It is widely recognized by the plastic industry, that when designing with plastic, sharp corners are to be avoided. A sharp corner augments localized stresses and creates a preferential site for crack initiation by multiplying stresses where cracking can more easily occur. *See* DuPont Delrin acetal resin Modeling Guide, *Technical Information* at 21 ("A sharp

CLASS ACTION COMPLAINT 9

corner in a [plastic] part acts as a notch and initiates break at a very low energy.").  A basic example of a stress concentrator – or notch - is the small groove found at the top of a fast-food ketchup packet.  The notch in the packet creates a stress concentrator in the material, allowing it to be opened.

40.     Sharp corners are the principal cause of plastic part failure because they produce localized stress or stress concentration.  Instead, when molding plastics, corners should be rounded to reduce stress.



**Figure 4:**
**(Effect of Load on Sharp Corners)**

41.     As early as 1988, GE Plastics, in a published design guide, warned manufacturers that, "the presence of sharp corners is perhaps the greatest single cause of part failure.  Minimizing sharp corners reduces stress concentration and results in parts with greater structural strength.  Because [plastic] resins are notch sensitive materials, fillets and radii should be included at all internal corners to reduce the effect of stress concentration."  GE Plastics, *VALOX Resin Design Guide* (June 1988).  This means that internal corners should be rounded, not sharp.

42.     Fluidmaster's plastic coupling design has threading cut into its sidewall that allows the nut to affix to the toilet's base.  This threading contains sharp transition points, or notches, which concentrate stress.

CLASS ACTION COMPLAINT                    10



**Figure 5:**
**(Computerized Tomography  Image of Internal Threading of Cracked Fluidmaster Coupling Nut)**

43.      Fluidmaster's plastic coupling nut design combined a notch sensitive plastic (acetal), and abrupt transition points creating a perfect storm of design defects.  These defects cause the plastic to creep extensively due to stress concentration following routine installation, which ultimately leads to the nearly identical circumferential fracture. (*See* Figure 1).

44.      Despite extensive instruction to the contrary from the plastics industry found in off-the-shelf design and material guides, as well as Fluidmaster's knowledge that repeated coupling nut failures were being reported each year, Fluidmaster continued to manufacture the defective coupling nut.  This defective design caused the coupling nut to repeatedly fracture in near uniform fashion after routine installation.

45.      Fluidmaster's defectively designed Toilet Connectors remain both in homes and stocked on store shelves throughout the United States, and they will ultimately fail due to creep and creep rupture, just as Plaintiffs already have.

## Inadequate Labeling & Warnings

46.      Fluidmaster had a duty to not only adequately design the plastic coupling to withstand the foreseeable pressure and torque during routine installation, but also to provide detailed instructions for installation, together with warnings against the possibility of failure.

CLASS ACTION COMPLAINT                    11

47.     The labels affixed to Fluidmaster's Toilet Connectors contain similar, incomplete instructions for tightening the plastic coupling nut, including "**Tighten ½ turn beyond hand tight,**" "**HAND TIGHTEN ONLY,**" and "**DO NOT OVERTIGHTEN.**"

48.     These instructions, however, provide *no* actual direction on how much torque can safely be applied to the plastic coupling nut without over-stressing the parts.  These vague, confusing instructions require that the installer guess as to how much torque is "just enough" to hold the nut in place so that it will not leak, while failing to warn of the nut's propensity to fracture due to the notches resident in the coupling nut's design.

49.     By 2007, Fluidmaster had internally concluded that *at least* 390 plastic coupling nut failures were caused by "over-tightening" the nut during routine installation.  Over-tightening exacerbates the defective design that causes the coupling nut to fail.  Therefore, at least by 2007 (long before either named Plaintiffs' plastic nuts failed), Fluidmaster had noticed that its installation instructions and warnings were vague, ambiguous, and defective contributing to the repeated failure of its coupling nuts.  *See USAA Casualty Ins. Co., v. Fluidmaster, Inc*. Case No. 06-CC-10212

50.     The Toilet Connector's label also fails to identify the risks and hazards associated with over-tightening the coupling nut.  The label does not warn about: the specific nature of the risks (i.e., spontaneous fracture), the gravity of the risks (i.e., flooding), or how to avoid those risks (i.e., replacement of defective Toilet Connector).

51.     Without proper installation instructions or warnings about the potential for the plastic nut to fracture and fail, Plaintiffs and the Class members were left on their own to determine whether the plastic nut was properly affixed to the toilet; and if, or when, it should be replaced while affixed to a toilet, which pursuant to Fluidmaster's own warranty should have been a minimum of  10 years.

52.     Fluidmaster abused its access to information and superior knowledge of the defects associated with the Toilet Connector's plastic coupling, and it exploited the Plaintiffs' ignorance of those defects and the likelihood that the Toilet Connector would fail and result in substantial property damage.

CLASS ACTION COMPLAINT                    12

**Fluidmaster's "Code Approvals" and "Certifications" Do Not Support the Sufficiency of the Coupling's Design**

53.     Fluidmaster advertised on its website that its Toilet Connectors were "code approved" and "exceed[ed] all plumbing code requirements," including those imposed by IAMPO and ASME.  However, none of these approvals has any meaningful application to the plastic coupling nut.

54.     IAMPO stands for the "The International Association of Plumbing and Mechanical Officials" which coordinates the development and adaptation of plumbing codes to meet the specific needs of individual jurisdictions both in the United States and abroad.  IAPMO develops and publishes the Uniform Plumbing Code (UPC).

55.     IAMPO does not do any testing and does not provide any certification for the plastic coupling nuts.  Specifically, IAMPO does not have codes or standards designating the appropriate material to be used for the plastic coupling *or* how much torque the coupling nut should be able to withstand.  The IAMPO certification is wholly irrelevant as it relates to the sufficiency of the design of the plastic coupling nut.

56.     Similarly, ASME stands for the "American Society of Mechanical Engineers," which is a professional association that develops codes and standards for mechanical engineers.

57.     Just like IAMPO, ASME does not provide any certification for the plastic coupling nut design nor does it have any standards related to a plastic coupling's ability to withstand stress during routine installation.  The ASME's standards are wholly irrelevant as it relates to the sufficiency of the design of the plastic coupling nut.

**Fluidmaster Changed the Toilet Connector Design to Remedy the Defects**

58.     Fluidmaster knew that its plastic coupling nut design contained excessive preventable dangers; specifically, Fluidmaster knew that the coupling nut was susceptible to creep rupture and that the installation instructions and warnings failed to provide the installer with sufficient information to safely install the Toilet Connector.

59.     Despite its knowledge, Fluidmaster never provided any public warnings about the risk of the Toilet Connector's failure.  Fluidmaster also never instituted a recall to inspect, repair,

or replace the knowingly defective Toilet Connectors. As a result, homes and buildings throughout the United States are exposed to, and continue to suffer, catastrophic water damage due to the failure of Fluidmaster defective Toilet Connectors.

60.     Instead of notifying consumers of these defects, Fluidmaster reduced the toilet connectors' warranty life from 10 to 5 years, and then began to re-designing the Toilet Connector. At some point, in mid-2011 (prior to either named Plaintiffs' failure), Fluidmaster began to market and sell a new, reinforced Toilet Connector.

61.     Fluidmaster's re-designed Toilet Connector replaced the defective coupling nut's notch sensitive acetal with a glass filled polypropylene. Glass reinforced polypropylene provides high strength, high stiffness and excellent impact behavior. The use of glass reinforced polypropylene for toilet coupling nuts had been common in plastic plumbing parts as early as 2003.

62.     To reduce the coupling nut's stress concentration, Fluidmaster rounded the transition points in the threading to eliminate the sharp transition points – notches – to reduce stress concentration resident in the design.

**Figure 6**



| **DEFECTIVE DESIGN** | **REMEDIATED DESIGN** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

 

**Figure 7**
**(CT Image of Internal Thread Root of Remediated Design on LEFT;**
**Defective Design Thread With Notches on RIGHT)**

63. Fluidmaster remediated the defects of its defective coupling nut and placed the re-designed nut into the market. Fluidmaster however never publicized the fact that the nut was redesigned. Fluidmaster also did not recall the defectively designed nuts from its distribution networks, nor did it notify property owners that the defective nut could spontaneously fail and should be replaced.

64. Fluidmaster remediated the defects of its defective coupling nut and placed the re-designed nut into the market. Fluidmaster however never publicized the fact that the nut was redesigned. Fluidmaster also did not recall the defectively designed nuts from its distribution networks, nor did it notify property owners that the defective nut could spontaneously fail and should be replaced.

65. Thus, at all times material hereto, and prior to the times when Plaintiffs suffered damage, Fluidmaster knew that: (a) the risk of the Toilet Connector plastic coupling nut's failure was substantial; (b) Plaintiffs and the Class members were unaware of the substantial risk that the Toilet Connector plastic coupling nut would fail; (c) Plaintiffs and the Classes had a reasonable expectation that Fluidmaster would disclose the risk and cure the defects; and (d) Plaintiffs and the Classes were unaware that their Toilet Connectors should be replaced or that

1  they had a useful life shorter than their stated warranty period.

2  **Plaintiffs and the Classes Have Been Damaged**

3

4  66.     Plaintiffs and the Class members have suffered actual harm as a result of

5  Fluidmaster's actions because the Toilet Connectors in their homes contain design defects and

6  inadequate labeling that have caused and/or could cause the plastic coupling nut to fracture, leak

7  water and damage property.

8  67.     Plaintiffs and the Classes had a reasonable expectation that the service life of the

9  Toilet Connectors would exceed 10-years, as stated by the Fluidmaster warranty. The Toilet

10  Connector defects, however, caused the Toilet Connectors owned by Plaintiffs and the Classes to

11  experience premature failure.

12  68.     Moreover, at all times material hereto, a mechanically and financially feasible,

13  safer alternative design existed that presented no adverse consequences to the product or to the

14  consumer. Indeed, as early as 2003, other toilet connector manufactures remediated their designs

15  to address all of the design flaws outlined herein, including switching from notch sensitive

16  acetal, to a stronger glass filled polypropylene.[1]

17  69.     The injuries sustained by Plaintiffs and the Classes flow from common facts

18  surrounding Fluidmaster's misconduct, including: (1) the Toilet Connector had defects that led to

19  fracture of the plastic coupling; (2) the Toilet Connectors contain an excessive preventable

20  danger which could lead to catastrophic water damage to property; (3) Fluidmaster did not

21  provide adequate instruction for installation or warnings urging periodic replacement; (4)

22  Fluidmaster, despite knowing about the Toilet Connectors' defects, failed to provide any public

23  notice or warning about the defective coupling nut design or institute a recall to repair or replace

24  the defective Toilet Connectors; (5) a mechanically and financially feasible, safer design

25  alternative existed as early as 2003 that contained no adverse consequences to the product or the

26  [1]     On September 9, 2003, one of Fluidmaster's principal competitors, Brass-craft Manufacturing
Company, obtained a patent for a re-designed coupling nut for its toilet connectors. The Brass-Craft
27  design cured many of the defects outlined herein, including switching to a 30% glass-filled
polypropylene. (US D479, 585 S). And by July 2009, Watts Water Technologies, the largest distributor
28  of toilet connectors, introduced a similar remediated design to the United States market replacing acetal
with a glass filled polypropylene.

consumer; and (6) Fluidmaster knowingly re-designed the Toilet Connectors and placed them in the market undetected in order to actively conceal the defects of the earlier design.

70.     The damages suffered by Plaintiffs and the Classes include, without limitation, amounts paid for the defective Toilet Connectors; amounts paid to remediate property damage caused by flooding;  together with the cost to replace the defective Toilet Connectors, as well as incidental and consequential damages..

## Active Concealment / Equitable Tolling

71.     The inherent defects in the plastic coupling nuts are not perceptible to Plaintiff or other Class members until the coupling nut ultimately fractures and causes water leaks and property damage.  Even after water begins leaking into the property, homeowners cannot determine the nature of the defect without expert assistance.

72.     Because of the facts alleged in the preceding paragraphs, Plaintiffs and Class members did not become aware of the defects with the Toilet Connectors until they suffered damages from its failure.

73.     In addition, Fluidmaster is estopped from asserting a statute of limitations defense because Fluidmaster failed to disclose facts that it was obligated to disclose concerning the defects in its Toilet Connectors, Fluidmaster actively concealed and misrepresented to Plaintiffs and the Classes facts which were essential to understanding that Plaintiffs and the Classes had claims against Fluidmaster, and Fluidmaster otherwise acted so as to prevent Plaintiffs and the Classes from learning that they possessed claims against Fluidmaster.  Had Plaintiffs and the Classes been aware of the facts which Fluidmaster misrepresented and concealed, they would have commenced suit against Fluidmaster before the running of any statute of limitations alleged to be applicable to this case.

## CLASS ACTION ALLEGATIONS

74.     Plaintiffs bring all their claims as class claims pursuant to Fed. R. Civ. P. 23.  The requirements of Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) are met with respect to the Classes defined below.

CLASS ACTION COMPLAINT                    17

75.     A Rule 23(b)(2) Class is appropriate when the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

76.     Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2751 (3d ed. 1998).

77.     Fluidmaster's failure to warn or acknowledge that their Toilet Connector with a plastic coupling nut contains latent defects that cause fracture resulting in extensive property damage, as well as their failure to notify Plaintiffs and the Class members about the remediation to the defective Toilet Connector, makes declaratory relief with respect to a Rule 23(b)(2) class appropriate.

78.     The Rule 23(b)(2) "Equitable Relief Class" is defined as follows:

> All persons in the United States who own and/or reside in a structure that contains a Fluidmaster toilet connector with an acetal coupling nut.

79.     Plaintiffs propose a Rule 23(b)(3) "Damages Class" defined as follows:

> All persons in the United States who purchased a Fluidmaster toilet connector with an acetal coupling nut and/or had a Fluidmaster toilet connector with an acetal coupling nut fail resulting in water damage.

80.     Excluded from the Classes are Defendant Fluidmaster, any entities in which Fluidmaster has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees and members of such person's immediate families, the presiding judge(s) in this case and his/her immediate family, and any class member who has entered into a binding release for their claim with Fluidmaster and/or is barred from bringing a claim due to a judgment entered in a court of law pursuant to the doctrines of res judicata and/or collateral estoppel.

81.     The Classes expressly disclaim any recovery for physical injury caused by a Toilet Connector's coupling nut failure.

1

**RULE 23(a), (b)(2), and (b)(3) CRITERIA**:

2    82.    <u>Numerosity</u>:  Plaintiffs are informed and believe that Fluidmaster sold over a

3    million defective Toilet Connectors throughout the United States during the Class Period.

4    Additionally, Plaintiffs believe, and therefore aver, that Fluidmaster's Toilet Connectors have

5    failed thousands of times throughout the United States resulting in damages.  Accordingly, the

6    Classes consist of hundreds, if not thousands of persons, making individual joinder of all the

7    Class members impracticable.  The Classes can be readily identified; Fluidmaster's Toilet

8    Connectors can be identified by unique markings on the Toilet Connector itself, together with the

9    labeling affixed to each connector.

10    83.    <u>Commonality</u>:  Questions of law and fact are common to the Plaintiffs, the

11    Equitable Relief Class and the Damages Sub-Class, and they predominate over questions

12    affecting only individual members.  Common questions include:

13        (a)    Whether the design of the Toilet Connectors plastic coupling nut is
14    defective;

15        (b)    Whether the Toilet Connector label provides adequate instruction for its
    installation, its useful life, its warranty, as well as adequate warnings regarding its
16    propensity to fail;

17        (c)    Whether Fluidmaster owed Plaintiffs and the Classes a duty to warn about
18    the Toilet Connectors' defects;

19        (d)    Whether Fluidmaster's design contemplated and compensated for routine
20    torque applied during installation;

21        (e)    Whether Fluidmaster remediated the design of the defective Toilet
    Connector without notifying Plaintiffs and the Class members;
22

23        (f)    Whether Fluidmaster continued to sell the defective Toilet Connector after
    remediating its design;

24        (g)    Whether Plaintiffs and members of the Damages Class are entitled to
25    damages; and

26        (h)    Whether Fluidmaster violated state consumer protection laws.

27

28

CLASS ACTION COMPLAINT                    19

84. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Classes described above, and they arise from the same course of conduct by Fluidmaster. The relief Plaintiffs seek is typical of the relief sought for the absent Class members.

85. <u>Adequacy</u>: Plaintiffs will fairly and adequately represent and protect the interests of all absent Class members. Plaintiffs are represented by counsel competent and experienced in consumer protection, products liability, and class action litigation.

86. <u>The Prerequisites of Rule 23(b)(2) are Satisfied for an Equitable Relief Class</u>: The prerequisites to maintaining a class action for declaratory and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist since Fluidmaster has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate declaratory and equitable relief with respect to the Class as a whole. The central issues of whether Fluidmaster's Toilet Connectors were defectively designed and whether the installation instructions were inadequate is the same for all Class members. There is an economy to class treatment of those central questions because their resolution has the potential to eliminate the need for continued and repeated litigation across the country related to the Toilet Connector's alleged defects and the reasons for its repeated failure.

87. <u>The Prerequisites of Rule 23(b)(3), Predominance and Superiority, are Satisfied for the Damages Class</u>: Plaintiffs and the Class have all suffered damages as a result of the Fluidmaster's defective Toilet Connector's plastic coupling nut. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

88. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Fluidmaster. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

89.     Fluidmaster's actions are generally applicable to the Classes as a whole, and Plaintiffs seek, *inter alia*, equitable remedies on behalf of a (b)(2) class and damages on behalf of (b)(3) classes.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*
### On behalf of the Rule 23(b)(2) Equitable Relief Class

90.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

91.     Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2751 (3d ed. 1998).

92.     There is an actual controversy between Fluidmaster and Plaintiffs concerning: (1) whether Fluidmaster's Toilet Connectors with plastic coupling nut have a defective design that leads to fracture of the plastic coupling nut; (2) whether Fluidmaster knew, or should have known, of this defective design; (3) whether the instructions provided by Fluidmaster for installation of the Toilet Connector were inadequate; (4) whether Fluidmaster failed to adequately warn against over-tightening the plastic coupling nut; and (5) whether Fluidmaster knowingly remediated the defects before Plaintiffs sustained any damage and without notice to Plaintiffs and the Declaratory Relief Class about the defects, and the potential for the Toilet Connectors to fail as a result of the defects.

93.     Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

94.     Despite the repeated failures since their introduction, Fluidmaster refused to acknowledge that its Toilet Connector with plastic coupling nuts were defectively designed and that their labels failed to adequately instruct how to safely and properly install the coupling nuts in order to avoid failure and property damage. Fluidmaster remediated the defective design and

1   revised the label's instructions without advising consumers, and it continued to sell the defective

2   Toilet Connectors with their inadequate labels across the country.

3         95.     Accordingly, because of Fluidmaster's failure to act, Plaintiffs seek a declaration

4   that the Toilet Connectors with plastic coupling nuts are defective in their design, material and

5   labeling. These defects will cause the plastic coupling to fracture resulting in water damage to

6   property. The defective nature of the plastic coupling nut is material and requires disclosure to

7   all persons who reside in a structure that contains Fluidmaster's defective Toilet Connectors with

8   plastic couplings.

9         96.     The declaratory relief requested herein will generate common answers that will

10   settle the controversy related to the alleged defective design and labeling of the Toilet

11   Connectors with plastic coupling nuts and the reasons for their repeated failure. There is an

12   economy to resolving these issues as they have the potential to eliminate the need for continued

13   and repeated litigation.

### SECOND CAUSE OF ACTION
**Violation of California Unfair Competition Law**
**(Cal Bus & Prof Code § 17200 *et seq.*)**
**On Behalf of a Rule 23(b)(2) Equitable Relief Class**

17         97.     Each of the preceding paragraphs is incorporated by reference as though fully set

18   forth herein.

19         98.     Plaintiffs bring this cause of action on behalf of themselves, and on behalf of the

20   other Class members, against Fluidmaster for its unlawful, unfair, and/or deceptive business acts

21   and practices pursuant to California's Unfair Competition Law (UCL), Business & Professions

22   Code § 17200 *et seq.*, which prohibits unlawful, unfair and/or fraudulent business acts and/or

23   practices.

24         99.     This claim is predicated on the duty to refrain from unlawful, unfair and deceptive

25   business practices. Plaintiffs and the Class members hereby seek to enforce a general

26   proscription of unfair business practices and the requirement to refrain from deceptive conduct.

27        100.     The UCL prohibits acts of "unfair competition." As used in this section, "unfair

28   competition" encompasses three distinct types of misconduct: (a) "unlawful…business acts or

1    practices"; (b) "unfair fraudulent business acts or practices"; and (c) "unfair, deceptive or

2    misleading advertising."

3        101.    Defendant committed an *unfair* business act or practice in violation of the UCL

4    Fluidmaster knew that the plastic coupling's design was defective and that the instructions

5    provided for installation were inadequate, contradictory, and confusing.  It further knew that

6    Plaintiffs and the Class members could not learn or discover that the Toilet Connector was

7    defective, or that the coupling nut was over-stressed during installation, until the manifestation of

8    the failure.  Fluidmaster surreptitiously remediated the defects without warning consumers about

9    the coupling's potential to spontaneously fail and cause extensive property damage due to

10   flooding.  Fluidmaster's superior knowledge of the defects and the active concealment created a

11   legal duty to disclose them.

12       102.    As alleged in this complaint, Fluidmaster failed to disclose that the Toilet

13   Connector's plastic coupling nut contained a defect that could lead to spontaneous fracture and

14   Fluidmaster knew that its installation instructions were confusing and contradictory.

15   Fluidmaster's conduct produced no countervailing benefits to consumers or competition that

16   outweighed such substantial harm to Plaintiffs and the Class.  Because the injuries alleged

17   occurred without Plaintiffs' and the other Class members' knowledge, Plaintiffs and the Class

18   members, *a fortiori*, could not have avoided such injuries.  One cannot avoid something about

19   which one is unaware.  Accordingly, Fluidmaster has violated the "unfairness" prong of the

20   UCL.

21       103.    Plaintiffs would not have purchased the Toilet Connectors and/or had them

22   installed and/or otherwise exposed their real and personal property to catastrophic flooding, had

23   Fluidmaster disclosed the propensity for its Toilet Connectors to spontaneously fail and/or that a

24   remediated Toilet Connector was available to replace the defective ones.

25       104.    As a result of Fluidmaster's violation of the UCL, Plaintiffs and the Class

26   members have suffered injury-in-fact and lost money or property in the amounts paid for the

27   Toilet Connectors; amounts paid to remediate property damage stemming from the defective

28   Toilet Connectors; and amounts paid to replace the defective Toilet Connectors.

105.     Plaintiffs, on behalf of themselves and for all other similarly situated persons, demand judgment against Fluidmaster and demand declaratory, equitable, and/or injunctive relief requiring Fluidmaster to stop their unlawful, deceptive, and unfair conduct and prohibit Fluidmaster from continuing to sell the defective Toilet Connectors; require notice to the public at large of the design defects associated with the Toilet Connectors as well as disclose the availability of a remediated product and all other relief the Court deems just and equitable.

### THIRD CAUSE OF ACTION
**Negligence**
**On Behalf of a Rule23(b)(3) Damages Class**

106.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

107.     Fluidmaster was negligent in that it failed to use reasonable care when it designed, created, manufactured, assembled, labeled, tested, distributed and sold its Toilet Connectors with plastic coupling nuts.

108.     As the manufacturer and/or seller of a consumer product, Fluidmaster owed a duty to Plaintiffs and the Class members to provide a safe and quality product, and a duty to provide a product that would perform as it was intended and expected. Fluidmaster also owed a duty to Plaintiffs and the Classes to provide adequate instructions and warnings for proper and safe use of the product. Fluidmaster further owed a duty to provide Plaintiffs and the Classes with information related to Toilet Connectors' reasonable expected life, and information related to their maintenance and replacement.

109.     Fluidmaster breached each one of these duties.

110.     As a direct and proximate result of Fluidmaster's negligence, lack of care, and other wrongful acts, Plaintiffs and the putative Class members sustained damages.

111.     As a result of Fluidmaster's negligence, Plaintiffs and the Classes have suffered actual damages in the amounts they have paid to remediate property damage caused from flooding water, together with consequential and incidental damages.

CLASS ACTION COMPLAINT                    24

112.    That as a direct, proximate and foreseeable result of Fluidmaster's negligence, Plaintiffs and the Class members have been damaged in the aggregate, in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### Strict Liability-Design Defect and Failure to Warn
### On Behalf of a Rule 23(b)(3) Damages Class

113.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

114.    Fluidmaster designed, manufactured, sold and/or distributed defective Toilet Connectors with plastic coupling nuts to Plaintiffs and the Class.

115.    The Toilet Connectors that Fluidmaster designed, manufactured, sold and/or distributed were defective in their design.  Further, the Toilet Connectors were defective when they left Fluidmaster's control.

116.    Fluidmaster knew, or should have known, that the Toilet Connectors contained a non-obvious danger in their material and design.  Fluidmaster knew that the plastic coupling nut was highly susceptible to failure under expected installation conditions, and that consumers would not repeatedly replace their Toilet Connectors without an instruction to do so.

117.    Fluidmaster knew that Plaintiffs and the Class would use the Toilet Connectors without first inspecting their durability.  Fluidmaster failed to inform Plaintiffs and the members of the Class as to the Toilet Connectors' susceptibility to failure and warn them to replace the Toilet Connectors periodically.

118.    The Toilet Connectors designed, manufactured, sold and/or distributed by Fluidmaster were defective due to inadequate warnings and inadequate inspection and testing, and inadequate reporting regarding the results of quality-control testing and safety inspections, or lack thereof.

119.    Had Plaintiffs and the members of the Class been adequately warned about the likelihood that Fluidmaster's Toilet Connectors would fail, they would have taken steps to avoid damages by replacing the Toilet Connector.

120.    As a direct and proximate result of the defective condition of the Toilet Connector as designed, sold and/or distributed by Fluidmaster, Plaintiffs and other members of the Class have suffered injuries, including water damage to their property.

### FIFTH CAUSE OF ACTION
#### Negligent Failure to Warn
#### On Behalf of a Rule 23(b)(3) Damages Class

121.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

122.    Fluidmaster designed, sold and/or distributed defective Toilet Connectors to Plaintiffs and the Class.

123.    Fluidmaster knew or reasonably should have known that their Toilet Connectors were defective and dangerous and/or were likely to be dangerous when used in a reasonably foreseeable manner.

124.    Fluidmaster knew or reasonably should have known that Plaintiffs and the Class would not realize that the Toilet Connectors were defective and posed a danger of causing substantial property damage.

125.    Fluidmaster failed to adequately warn of the danger or instruct Plaintiffs and the Class on the safe use of the product.

126.    A reasonable manufacturer, distributor, assembler, or seller under the same or similar circumstances would have warned of the danger or instructed on the safe use of the product, including but not limited to, providing detailed installation instructions together with warnings to replace the Toilet Connectors periodically.

127.    As a direct and proximate result of the defective condition of the Toilet Connector as designed, manufactured, sold, assembled, and/or distributed by Fluidmaster, Plaintiffs and other members of the Class have been injured.  Such injuries include catastrophic water damage to their homes, together with incidental and consequential damages.

128.    Fluidmaster's failure to warn or instruct Plaintiffs and the Class was a substantial factor in causing their harm.

CLASS ACTION COMPLAINT                    26

## SIXTH CAUSE OF ACTION
### Breach of Implied Warranty Under the U.C.C.
### On Behalf of a Rule 23(b)(3) Damages Class

129.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

130.    Plaintiffs assert a claim for violations of Implied Warranty of Merchantability on behalf of themselves and all other similarly situated consumers.

131.    Plaintiffs are the ultimate consumers and intended end-users of the Toilet Connectors.

132.    By operation of law, Fluidmaster impliedly warranted to Plaintiffs and the Class that the Toilet Connectors were of merchantable quality, adequately contained, packaged, and labeled, conform to the promises or affirmations of fact made on the label, and fit for the ordinary purposes for which the Toilet Connectors were intended to be used.

133.    Fluidmaster knew or had reason to know at the time of sale that the Toilet Connectors were required for a particular purpose (supplying and containing water for a toilet), and that Plaintiffs and Class members were relying on Fluidmaster' skill or judgment to select or furnish such goods.

134.    Plaintiffs and the members of the Class also believed that if they were required to replace Fluidmaster's Toilet Connector prior to the stated 10-year warranty period Fluidmaster would have instructed them to do so.

135.    Fluidmaster breached their implied warranties when they failed to provide Toilet Connectors that were fit for their ordinary purpose; conformed to the promises or affirmations of fact made on the label; and failed to include the necessary instructions for safe and proper installation as well as when to replace the Toilet Connectors and the actual useful life of the Toilet Connectors.

136.    The latent design defects and the defects associated with the Toilet Connectors were not discoverable by Plaintiffs and the Class.  In fact, the label indicated just the opposite – the Toilet Connectors would last at least 10-years.

CLASS ACTION COMPLAINT                    27

137.    As a direct and proximate result of Fluidmaster's breach of the implied warranty, Plaintiffs and the Class members have incurred damages to their property, together with the costs incurred to purchase the defective Toilet Connector and to subsequently replace it after it failed.

<u>SEVENTH CAUSE OF ACTION</u>
<u>Common Law Breach of Express Warranty</u>
<u>On Behalf of a Rule 23(b)(3) Damages Class</u>

138.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

139.    Plaintiffs assert this claim for breach of express warranty on behalf of themselves and the Class members.

140.    Fluidmaster expressly represented and warranted to Plaintiffs and the Class members by and through oral and written statements, descriptions, and affirmations of fact in product advertisements, marketing materials, its web site, and other written materials intended for the general public, that the Toilet Connector was safe and fit for its proper and intended uses for up to 10-years, and that the Toilet Connector contained no defects in material or workmanship.

141.    Fluidmaster expressly represented and warranted the Toilet Connector against defects in material or workmanship during the 10-year period and that Fluidmaster would "replace any part of this plumbing product which proves to be defective in workmanship or materials under normal use for 10 years from the date of purchase."

142.    Fluidmaster publicized these statements to Toilet Connector buyers, and understood that the nature of their warranty and the quality of their design and workmanship were unavoidably material to all Plaintiffs and the Class members.

143.    These express warranties related to and covered qualities and features of the Toilet Connectors that were unavoidably material to Plaintiffs and the Class members.

144.    Plaintiffs and the Class members relied upon these express warranties in purchasing their Toilet Connectors.

145.    At the time they made these express warranties, Fluidmaster knew the purposes for which the Toilet Connectors were intended to be used, and warranted the Toilet Connectors as safe and fit for such purposes.

146.    At the time they made these express warranties, Fluidmaster knew that the Toilet Connectors did not conform to its express representations, because they contained latent defects in their design, material and workmanship.  Fluidmaster nevertheless continued to market Toilet Connectors by means of false and misleading information, including that they would last for up to 10-years, without regard to their actual fitness.

147.    The Toilet Connectors purchased by Plaintiffs and the Class members did not conform to Fluidmaster's promises, descriptions, or affirmations of fact, because they are not free from defects in materials and/or design.  The Toilet Connector contains a defective coupling nut design that is substantially certain to fracture due to the notch sensitivity of the plastic coupling nut and the presence of a notch or stress concentrator at the end of the thread.  As a result, the Toilet Connector frequently failed, causing water leaks and property damage during the warranty period entirely disproportionate to the age of the Toilet Connector.

148.    Fracture of the coupling nut from the stress concentration at the notch occurs gradually.  Due to the difficult to reach location of the Toilet Connector and the inability to visually see creep taking place in the coupling nuts, most Toilet Connector owners did not learn about the defective coupling nut design or its effects until they experienced a Toilet Connector failure and water leaks.

149.    Due to the nature of the defective coupling nut design, the date on which a Toilet Connector owner discovers his or her coupling nut fracture has little bearing on when the fracture occurred.  The product was defective at the time of sale.  Further, as discussed above, any complete coupling nut fracture occurring after the expiration of Fluidmaster's warranty period necessarily began within the warranty period because the deterioration of the defective coupling nut due to creep and craze formation, starts at installation.

150.    The coupling nut defect can be readily cured by replacing the Toilet Connector with one that contains a remediated coupling nut.

151. Plaintiffs and the Class members have incurred damages as described herein as a direct and proximate result of Fluidmaster's misrepresentations in its express warranty.

**EIGHTH CAUSE OF ACTION**
**Violation of the California Consumers Legal Remedies Act**
**(Cal. Civ. Code § 1750 *et seq.*)**
**On Behalf of the Rule 23(b)(2) and (3) Classes**

152. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

153. Plaintiffs and the Class members are consumers who purchased Defendants' Toilet Connectors for personal, family, or household purposes.

154. Plaintiffs and the Class members were reasonable consumers, in that, in acting reasonably under the circumstances, they were not versed in the art of inspecting and judging the design of Fluidmaster's Toilet Connector or in the process of its preparation or manufacture.

155. By failing to disclose and concealing the Toilet Connector's defects, Fluidmaster violated Civil Code § 1770(a), as it represented that their Toilet Connectors had benefits and characteristics which they do not have, including a 10-year warranty period. In addition, Fluidmaster represented that its Toilet Connectors were of a particular standard, quality or grade when they were of another. CLRA, Cal. Civ. Code §§ 1770(a)(5) and (7).

156. Fluidmaster's unfair or deceptive acts or practices occurred repeatedly in Fluidmaster's trade or business, was capable of deceiving a substantial portion of the purchasing public, and imposed a serious risk of substantial property damage.

157. Fluidmaster knew that its Toilet Connectors were defectively designed, would fail prematurely, and were not suitable for their intended use.

158. Fluidmaster was under a duty to Plaintiffs and the Class members to disclose the defective nature of the Toilet Connectors because:

    a) Fluidmaster was in a superior position to know the true state of facts about the defects with the plastic coupling nut;

    b) Plaintiffs and the other Class members could not reasonably have been expected to learn of or discover that the Toilet Connectors and the plastic coupling nut had design defects until the manifestation of the failure;

c) Fluidmaster knew that Plaintiffs and the Classes could not reasonably have been expected to learn or discover the defects and the associated damages that they cause; and

d) When the defects manifest themselves, they result in catastrophic water damage to property.

159. In failing to disclose the defective nature of the Toilet Connectors, Fluidmaster has knowingly and intentionally concealed material facts and breached its duty not to do so.

160. Plaintiffs and the Class members would not have purchased the Toilet Connectors had Fluidmaster disclosed the propensity for their Toilet Connectors to spontaneously fail.

161. As a direct and proximate result of Fluidmaster's unfair or deceptive acts or practices, Plaintiffs and the Class have suffered actual damages in the amounts paid for the defective Toilet Connectors, monies paid to replace the defective Toilet Connectors, and monies paid to remediate property damage caused by the defective Toilet Connectors.

162. On March 13, 2014, Plaintiffs sent Fluidmaster via overnight Federal Express, signature required a CLRA demand letter requesting the relief outlined herein. This pre-suit notice satisfied §1782(a). (See 3/13/14 Ltr. Attached as Exhibit A).

163. Fluidmaster did not provide the relief demanded herein within 30-days. Therefore, Plaintiffs' claim for damages under the CLRA is ripe. Plaintiffs now seek to recover all available damages pursuant to Cal. Civ. Code § 1780(a)(1).

164. Pursuant to Cal. Civ. Code § 1780(a)(2), (3) and (5), Plaintiffs and the Classes also seek an order for declaratory, equitable and/or injunctive relief prohibiting Fluidmaster from continuing to engage in the methods, acts, or practices alleged herein. Plaintiffs seek an order requiring Fluidmaster to notify consumers who paid for the defective Toilet Connectors that Fluidmaster has remediated and changed the design because of the latent defects.

165. Pursuant to Cal. Civ. Code § 1780(d), Plaintiffs and the Classes also seek attorneys' fees and costs, and other relief this Court deems proper.

166. Pursuant to Cal. Civ. Code § 1780(c), attached as Exhibit B hereto, is a Venue Affidavit stating facts showing that the action has been commenced in a county as a proper place for the trial of the action.

CLASS ACTION COMPLAINT                    31

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NINTH CAUSE OF ACTION (Alternatively)
### Arizona Consumer Fraud Act, §44-1521, *et seq.*
#### On Behalf of a Rule 23(b)(3) Damages Class

167. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

168. Plaintiff Rensel is a "person" as defined by A.R.S. §44-1521(6).

169. Fluidmaster's Toilet Connectors are "merchandise" as defined by A.R.S. §44-1521(5).

170. Fluidmaster offered and sold Toilet Connectors to members of the Class, including Plaintiff Rensel, as the term "sale" is defined by A.R.S. §44-1521(7).

171. In making such sales to Plaintiff Rensel and the members of the Class, Fluidmaster misrepresented and/or concealed, suppressed and/or omitted material facts about the Toilet Connectors' strength, durability, craftsmanship, materials, and useful life, with the intent that Plaintiff Rensel and the members of the Class rely on such misrepresentations and omissions in connection with the sale and advertisement of the Toilet Connectors in violation of A.R.S. §44-1522(A).

172. Plaintiff Rensel and the members of the Class relied on Fluidmaster and suffered damages proximately caused by Fluidmaster's misrepresentations and/or omissions regarding the strength, durability, craftsmanship, materials and useful life of the Toilet Connectors.

## TENTH CAUSE OF ACTION (Alternatively)
### Violation of Vermont's Consumer Protection Act
#### (Vt. Stat. Ann. Tit. 9 §§ 2451, *et seq.*)

173. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

174. Plaintiff Kirsch is a "consumer" as defined by 9 V.S.A. §2451(a) in that he is a person who purchased, or otherwise agreed to pay consideration, for a Fluidmaster toilet connector.

175. The Fluidmaster Toilet Connector is a "good" as defined by 9 V.S.A. §2451(b).

176. Fluidmaster is a "seller" as that term is defined by 9 V.S.A. §2451(c).

1   177.   Fluidmaster failed to sell the Toilet Connectors in the manner and of the nature
2   advertised or offered.  Fluidmaster omitted that the Toilet Connectors were likely to fail before
3   the warranty period.  Fluidmaster also promoted the plastic coupling nut on its Toilet Connectors
4   as "heavy duty" and "durable and easy to grip" for installation.

5   178.   Had Fluidmaster adequately disclosed the defects with its Toilet Connector,
6   Plaintiff Kirsch would have replaced the Toilet Connector in his home or otherwise would not
7   have paid for it.

8   179.   As a result of Fluidmaster's conduct, Plaintiff Kirsch has suffered damages,
9   including the amounts paid for the Toilet Connector, as well as the cost to repair the damage to
10  his property.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf all others similarly situated,
respectfully request that this Court enter a judgment against Fluidmaster and in favor of
Plaintiffs, and grant the following relief:

A.   Determine that this action may be maintained as a Class action with respect to the
Classes identified herein; certify a class action pursuant to both Rule 23(b)(2) and (3) with
respect to particular issues if appropriate; and designate and appoint the named Plaintiffs herein
and their counsel to serve as Class Representatives and Class Counsel;

B.   Grant Plaintiffs and the Equitable Relief Class members, pursuant to Rule
23(b)(2), declaratory, equitable, and/or injunctive relief and require Fluidmaster to stop the
unlawful, unfair and deceptive conduct alleged herein and/or notify the Equitable Relief Class
members about the Toilet Connector defect at Fluidmaster's expense, and to replace all defective
Toilet Connectors;

C.   Grant Plaintiffs and the Rule 23(b)(3) Classes awards of damages in such amount
to be determined at trial or as provided by applicable law;

D.   Grant Plaintiffs and the members of the Classes their costs of suit, including
reasonable attorneys' fees and expenses, as provided by law; and

E. Grant Plaintiffs and the members of the Classes such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

## JURY TRIAL DEMAND

Plaintiffs, by their counsel, request a trial by jury on those causes of actions set forth herein.

Date: April 23, 2014 By:_____/s/ Elaine T. Byszewski_____
Elaine T. Byszewski (SBN 222304)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
301 N. Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: Elaine@hbsslaw.com

Steve Berman
Anthony D. Shapiro
Jeniphr Breckenridge
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
tony@hbsslaw.com

Simon Bahne Paris
Patrick Howard
Charles J. Kocher
**SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.**
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
Tel:    (215) 575-3986
sparis@smbb.com
phoward@smbb.com
ckocher@smbb.com

Daniel E. Gustafson
Amanda M. Williams
Raina C. Borrelli
**GUSTAFSON GLUEK PLLC**
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Tel:    (612) 333-8844
dgustafson@gustafsongluek.com
awilliams@gustafsongluek.com
rborrelli@gustafsongluek.com

Joseph J. Tabacco, Jr. (SBN 75484)
Todd. A. Seaver (SBN 271067)
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6282
Email: jtabacco@bermandevalerio.com
tseaver@bermandevalerio.com

CLASS ACTION COMPLAINT                        34

Donald L. Perelman
Gerard A. Dever
Ria C. Momblanco
**FINE, KAPLAN AND BLACK, P.C.**
One South Broad St., 23rd Floor
Philadelphia, PA 19107
Telephone: (215) 567-6565
Fax: (215) 568-5872
dperelman@finekaplan.com
gdever@finekaplan.com
rmomblanco@finekaplan.com

*Counsel for Plaintiffs and the Proposed Classes*

# EXHIBIT A



S A L T Z   M O N G E L U Z Z I
B A R R E T T   &   B E N D E S K Y PC
T R I A L   L A W Y E R S

| DELAWARE COUNTY OFFICE | ONE LIBERTY PLACE, 52ND FLOOR | NEW JERSEY OFFICE |
|---|---|---|
| 20 WEST THIRD STREET | 1650 MARKET STREET | 8000 SAGEMORE DRIVE |
| P.O. BOX 1670 | PHILADELPHIA, PA 19103 | SUITE 8303 |
| MEDIA, PA 19063 | VOICE 215.496.8282 | MARLTON, NJ 08053 |
| VOICE 610.627.9777 | FAX 215.496.0999 | VOICE 856.751.8383 |
| FAX 610.627.9787 | | FAX 856.751.0868 |

MONTGOMERY COUNTY OFFICE
43 EAST MARSHALL STREET
NORRISTOWN, PA 19401
VOICE 610.278.1591
FAX 610.272.2549

SIMON B. PARIS
DIRECT DIAL 215.575.3986
SPARIS@SMBB.COM

March 13, 2014

***<u>Via Overnight Federal Express – Signature Required</u>***
Mr. Michael Morgan
Product Liability Manager
**Fluidmaster, Inc.**
30800 Rancho Viejo Rd.
San Juan Capistrano, CA 92675

## <u>NOTICE PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1782</u>

**PLEASE TAKE NOTICE** that this office represents Steven Rensel, Brian Kirsch, and a potential putative class of those who purchased and/or suffered property damage stemming from the failure of a FLUIDMASTER, INC., toilet connector with an acetal coupling nut. It has come to our attention that FLUIDMASTER, INC. has violated the California Consumer Legal Remedies Act ("CLRA"), Civil Code Section 1770 *et seq.* This correspondence serves as notice under CLRA Section 1782, as well as certain breach of express warranty law, both which require thirty days notice prior to the commencement of any action for damages.

Fluidmaster's CLRA violations arise from its unfair and/or deceptive acts or practices in the marketing and sale of its toilet connectors with an acetal coupling nut. Despite knowledge of certain defects with at least the design and labeling, Fluidmaster maintains that the coupling nuts are "heavy duty" and "durable" while failing to disclose that they pose a substantial risk of failure resulting in damage to property. Fluidmaster has an affirmative duty to disclose the defective nature of the toilet connectors, because the company possesses superior knowledge about the defects than the consuming public. Information about the defects would be material to a reasonable consumer in deciding to purchase Fluidmaster's toilet connectors and/or have them installed or replaced in their property. Additionally, Fluidmaster expressly warranted that its toilet connectors with an acetal coupling were free from defects in materials and/or workmanship under normal use for up to 10-years. This has proven to be untrue. Fluidmaster's unfair and/or deceptive acts or practices were likely to deceive reasonable consumers about the nature of the toilet connectors and their warranted useful life. Rather than disclose these defects, Fluidmaster remediated the coupling nuts and placed the remediated couplings into the market without advising consumers to remove and replace the defective ones.



S A L T Z  M O N G E L U Z Z I
B A R R E T T  &  B E N D E S K Y  PC
T R I A L  L A W Y E R S

Mr. Michael Morgan
Page 2
March 13, 2014

———————————————

By failing to disclose these defects as well as the subsequent remediation, Fluidmaster has violated and continues to violate CLRA Section 1770 *et seq.*, in at least the following respects:

a.  In violation of Section 1770(a)(5), Fluidmaster misrepresents the character, uses and benefits of the toilet connectors; and

b.  In violation of Section 1770(a)(7), Fluidmaster misrepresents that its toilet connectors were of a particular standard, quality, or grade when they were of another.

*See also* Section 1770(a)(9), (14), and (17). These unfair and deceptive acts and practices violate the CLRA. This Notice is being served on behalf of a putative Class of those who purchased and/or suffered damage as the result of these alleged defects.

Pursuant to California Civil Code § 1782, Plaintiffs hereby demand that Fluidmaster halt such unfair trade practices and make the following appropriate remedies on a classwide basis, or they will file a class action complaint seeking damages under § 1780 within thirty days of this Notice:

- Notify consumers of the defects with the toilet connectors that have acetal coupling nuts;

- Replace and/or reimburse consumers for the defective toilet connectors previously sold;

- Reimburse all members of the Class for any monies paid to remediate property damage caused from flooding water; and

- Discontinue selling the defective toilet connectors.

In sum, pursuant to California Civil Code § 1782, this letter serves as notification of Fluidmaster's alleged violations of § 1770, and Plaintiffs demand the above-described rectification of these violations on a classwide basis.

Sincerely,
**SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.**

Simon B. Paris

**LaFontaine, Ana**

| | |
|---|---|
| **From:** | trackingupdates@fedex.com |
| **Sent:** | Friday, March 14, 2014 1:22 PM |
| **To:** | LaFontaine, Ana |
| **Subject:** | FedEx Shipment 798202558500 Delivered |

fedex.com | Ship | Track | Manage | Learn | Office/Print Services



# Your package has been delivered

## Tracking # 798202558500

Ship (P/U) date:
**Thursday, 3/13/14**

**Patrick Howard, Esquire**
Saltz Mongeluzzi Barrett & Ben
Philadelphia, PA 19103
US


Delivered

Delivery date:
**Friday, 3/14/14 10:19 AM**

**Mr. Michael Morgan**
Fluidmaster, Inc.
30800 Rancho Viejo Road
Product Liability Manager
SAN JUAN CAPISTRANO, CA 92675
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| Tracking number: | <u>798202558500</u> |
| Status: | Delivered: 03/14/2014 10:19 AM Signed for By: E.RODRIGUEZ |
| Reference: | Fluidmaster 2013-725 |
| Signed for by: | E.RODRIGUEZ |
| Delivery location: | SAN JUAN CAPISTRANO, CA |
| Delivered to: | Shipping/Receiving |
| Service type: | FedEx Priority Overnight |
| Packaging type: | FedEx Envelope |
| Number of pieces: | 1 |
| Weight: | 0.50 lb. |
| Special handling/Services: | Direct Signature Required |

1

Deliver Weekday

✉ Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 12:22 PM CDT on 03/14/2014.

To learn more about FedEx Express, please go to **fedex.com**.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above, or go to **fedex.com**.

This tracking update has been sent to you by FedEx at your request. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and terms of use, go to **fedex.com**.

Thank you for your business.

# EXHIBIT B

1  Elaine T. Byszewski (SBN 22204)
2  **HAGENS BERMAN SOBOL  SHAPIRO LLP**
   301 N. Lake Avenue, Suite 203
3  Pasadena, CA  91101
   Telephone: (213) 330-7150
4  Facsimile: (213) 330-7152
   Email: Elaine@hbsslaw.com
5
   Simon Bahne Paris
6  Patrick Howard
   Charles J. Kocher
7  **SALTZ, MONGELUZZI, BARRETT**
   **& BENDESKY, P.C.**
8  One Liberty Place, 52nd Floor
   1650 Market Street
9  Philadelphia, PA 19103
   Telephone: (215) 575-3985
10 Facsimile: (215) 496-0999
   Email: sparis@smbb.com
11        phoward@smbb.com
          ckocher@smbb.com
12

13              **UNITED STATES DISTRICT COURT**
14      **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
                **SOUTHERN DIVISION – SANTA ANA**
15 |

16 STEVEN RENSEL & BRIAN KIRSCH,
17  individually and on behalf of all others
   similarly situated,
18
                                            **AFFIDAVIT OF STEVEN RENSEL**
   Plaintiffs,                              **PURSUANT TO CAL CIVIL CODE §1780(c).**
19
20 v.

21
22 FLUIDMASTER, INC.

23 Defendant.

24

25

26

27

28

                              – 1–

1.     I, Steven Rensel, submit this affidavit pursuant to §1780(c) of the Consumer Legal Remedies Act and declare the following.

2.     I am a resident of the State of Arizona, and a named Plaintiff and putative class representative in the above-entitled action.

3.     Pursuant to Cal. Civ. Code §1780(c) I have filed this action in the county in which Defendant Fluidmaster resides, maintains its principal place of business, and is doing business. Fluidmaster, Inc. is a California corporation headquartered at 30800 Rancho Viejo Road, San Juan Capistrano.

4.     I declare under the penalty of perjury pursuant to the laws of the State of Arizona that the foregoing is true and correct.


Executed this 21st day of April, 2014, in the State of Arizona.


_____
STEVEN RENSEL